In re the MARRIAGE OF Tia Shandell LEWIS and Johnny Todd Lewis.

Tia Shandell Lewis, Petitioner–Respondent,

v.

Johnny Todd Lewis, Respondent–Appellant.

No. SD 31663.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 23, 2012.

Greg R. Bridges, Neosho, for appellant.

W. Henry Johnson, Neosho, for respondent.

## NANCY STEFFEN RAHMEYER, J.

Johnny Todd Lewis ("Father") appeals from the denial of his motion to set aside a default judgment which granted Tia Shandell Lewis ("Mother") a Judgment of Dissolution of Marriage. Father contends that the trial court abused its discretion in refusing to set aside the default judgment thirteen days after it was entered. Because the child custody arrangement in the judgment was contrary to the custody arrangement the parties had voluntarily been doing prior to the default and because the judgment does not accommodate Father's work schedule, we believe the trial court abused its discretion in refusing to set aside the default judgment.[1]

Rule 74.05(d) provides, in part:

Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside.

. . .

"Good cause" includes a mistake or conduct that is not intentionally or reckless-ly designed to impede the judicial process.

Rule 74.05(d).[2]

■ A "defaulting defendant satisfies the meritorious defense requirement of Rule 74.05(d) if she or he sets forth allegations which, if supported by evidence found credible by a fact-finder, would defeat the plaintiff's claim." *In re Marriage of Balough*, 983 S.W.2d 618, 623 (Mo.App. S.D. 1999).

> "The trial court has the discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. Thus, appellate courts are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. This is because of the law's distaste for default judgment and its preference for trials on the merits."

*Billingsley v. Ford Motor Co.*, 939 S.W.2d 493, 498 (Mo.App. S.D.1997) (quoting *Keltner v. Lawson*, 931 S.W.2d 477, 479 (Mo. App. S.D.1996) (internal citations omitted)). "Broad discretion is afforded to trial court decisions granting motions to set aside a default judgment while the trial court has narrowed discretion in decisions denying a motion." *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 687 (Mo. banc 2007). Although Rule 74.05(d) states that a court "may" set aside a default judgment if the motion contains a meritorious defense and good cause, the trial court's discretion is not unbridled but is constrained by the

---

1. Mother's Parenting Plan was filed June 7, 2011, the terms of which were incorporated into the judgment.

2. All rule references are to Missouri Court Rules (2012), and all references to statutes are to RSMo 2000, unless otherwise specified.

parameters of reasonableness and construed in light of the purposes of the rule. *J.E. Scheidegger Co., Inc. v. Manon*, 149 S.W.3d 499, 502 (Mo.App. S.D.2004). "[A]n appellate court is much more likely to interfere with the trial court's decision when the motion to set aside the judgment has been denied." *Id.* There is a strong preference for deciding cases on the merits. *Brungard*, 240 S.W.3d at 687–88.

■ It is undisputed that Father was personally served a copy of the Petition. It is also undisputed that Father received his mail at a mailing address, not the place where he was personally served, and he did not receive a copy of the parenting plan, which was not in conformance with the parties' informal custody arrangement, that was sent to him by Mother's attorney. Mother testified that she knew Father received his mail at the post office box. There is no question that Mother's attorney did not ever meet with Father or purport to represent Father. Even if the court completely disregarded Father's statements as to an agreement on the specifics of the plan between the parties, Father had a meritorious defense.

Father's testimony was that the parties had reached an agreement on child custody and child support and were acting upon that agreement, but decided to use one lawyer to save money "because we both don't really have the money." The fact remains that Father works on alternating months on Friday, Saturday, and Sunday. The judgment provided that Mother have sole physical custody of the children, ages four and eight, and provided that Father would have visitation rights on "[a]lternating weekends from 6:00 p.m. Friday to 7:00 the following Sunday."[3] Mother contended that she would work with Father "as long as it doesn't interfere with their schooling or other activities"; however, the default decree was taken on June 16th, and by September 12th, the day of the hearing to set aside the decree, Mother had already gotten "upset" and refused to let the children see their Father. The decree that was entered provides no legal remedy for Father six months out of the year and, more importantly, provides him with no visitation for six months of the year.[4]

Mother argues that she never would have agreed to let Father have the kids all of the weekends that he does not work because she would not have the kids each weekend every other month; however, Mother ignores the fact that she would at least have contact with the children during the week. Under the default judgment, Father could be denied all contact whatsoever with the kids for the whole month, six months of the year. He would have to rely on Mother's willingness to make an agreement with him. Clearly, as this default and the behavior after the default was entered indicate, Father cannot rely upon an agreement with Mother that she

---

3. The judgment states that, "In determining the custody of the children, the Court has considered all relevant factors, including: the wishes of the children's parents to their custody and the proposed Parenting Plan submitted by both parties[.]" However, the Parenting Plan filed by Mother did not reflect either Father's wishes or the voluntary custody arrangement the parties had been following prior to trial.

4. The trial court indicated that Father could always file a motion to modify "if some things need to be modified." Of course, the problem with that approach is that Father must allege that there has been a change in circumstances since the time of the dissolution. Clearly, that is not the case.

will try to accommodate his work schedule. A work schedule that does not allow for meaningful parental contact six months of the year constitutes a meritorious defense.[5] There was no testimony at the default hearing that Father's visitation should be restricted in any way nor had it been restricted.

■ Given our standard of review and the preference for trials to be on the merits, especially when considering the sensitive issue of child custody, we also find Father met the standard for good cause. When the trial court denied the motion to set aside the default decree because "[his] story is that I trusted my wife, the woman that I'm divorcing, to tell me what we were going to do[,]" the court indicated it was not good cause to rely upon agreements in a dissolution setting. If the court's assessment of the situation indicated that, as a matter of law, agreements between these parties was not a valid reason to default in a dissolution, then we disagree.[6] In this case, where the parties had voluntarily maintained a custody schedule and a child support schedule, where Father was not served with a different parenting plan that would have put him on notice that the parties did not have an agreement, where Mother knew that Father received his mail at a post office box and not the address where he was physically served, where the motion to set aside the default judgment was filed within 13 days after the judgment was entered, and where the entered judgment differed significantly from the status quo, Father's behavior in failing to file an answer was not intentionally or recklessly designed to impede the judicial process.

The trial court abused its discretion in refusing to set aside the default judgment; the judgment denying the motion to set aside the default judgment is reversed and remanded.

GARY W. LYNCH, P.J., WILLIAM W. FRANCIS, JR., J., Concur.

---

**5.** Section 452.375.4 emphasizes Missouri's public policy declaring children should have frequent, continuing and meaningful contact with both parents, except when the court specifically finds otherwise. *Stoller v. Stoller*, 330 S.W.3d 814, 820 (Mo.App. S.D.2011). It states:

The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to partici-

pate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.
Section 452.375.4.

**6.** In fact, normally, a good faith effort to work out an agreement between the parties is designed to assist the judicial process.